(Opinion published 56 N. W. Rep. 826.)

---

ELIZABETH PFEFFERLE *et al. vs.* CHRISTIAN WIELAND *et al.*

Argued by appellant, submitted on brief by respondent, Oct. 18, 1893. Reversed Nov. 13, 1893.

No. 8444.

**Lien of a purchaser at a tax sale for subsequent taxes paid.**

The provisions of Laws 1874, ch. 2, § 28, giving a purchaser at tax sale a lien for taxes paid after the sale, apply only to cases where the sale is declared void by reason of "something occurring or omitted subsequent to the entry of the judgment directing the sale."

**State assignment certificate is an official deed.**

A certificate of the county auditor, executed under section 19 of the act referred to, assigning the right of the state to lands bid in at the sale, is "an official deed," within the meaning of the occupying claimant act, (1878 G. S. ch. 75, § 15.)

**Same—Failure to state subsequent taxes paid does not render it void.**

The fact that such certificate does not recite that the purchaser has also paid "the amount of any subsequent taxes" on the land does not render it void or irregular on its face.

**Findings justified by the evidence.**

Evidence *held* to justify a finding that defendants had no "actual notice" of any defect invalidating the certificate.

**Case remanded.**

Cause remanded for additional findings, and modification of the conclusions of law.

Appeal by plaintiffs, Elizabeth Pfefferle and Richard Pfefferle her husband, from an order of the District Court of Brown County, *B. F. Webber,* J., made January 28, 1893, denying their motion for a new trial.

On October 12, 1874, in proceedings to enforce the payment of delinquent taxes for the year 1872 judgment was entered in the District Court under Laws 1874, ch. 2, against the west one fourth of section four (4) in Township 109 Range 31 on the Cottonwood River in Brown County for $34.37. The land was sold December 31, 1874, by the County Auditor under this judgment and was bid in for the State for $36.63 and a certificate of the sale issued. No copy of the resolution of the Board of County Commissioners of that county designating a newspaper in which the delinquent list and notice should be published was ever filed in the office of the clerk of that court and the judgment was for that reason void. On December 28, 1876, Peter Manderfeld paid $51.22 into the County Treasury and the Auditor sold to him the right of the State in and to the land and gave him an assignment in the form prescribed by Laws 1874, ch. 2, § 19, which certificate was on the next day recorded in the Registry of Deeds of Brown County. On August 25, 1877, Manderfield assigned this certificate to Henry Mueller and he at various times afterwards paid taxes on the land for subsequent years to the amount of $304.44. On May 20, 1886, Henry Mueller and wife sold and quitclaimed to their son, Martin Mueller the north half of the land and he went into possession thereof and at various times thereafter paid subsequent taxes on that eighty acres to the amount of $44.88. He built a house, barn, granary and fence thereon in good faith valued at $811. The yearly value of the rent of this eighty acres after he took possession in 1886 was $125. He rented this eighty acres to the defendant, Christian Wieland. The title of the whole one hundred and sixty acres derived from the United States was held by the plaintiff, Elizabeth Pfefferle. She and her

husband brought this action of ejectment against Wieland the tenant, alleging that he was in possession of the whole one hundred and sixty acres and demanding judgment for the recovery of the possession and $500 damages for the withholding thereof. Henry Mueller and Martin Mueller each intervened and by their answers alleged that they had an interest in the matter in litigation and united with the defendant Wieland in resisting the claim of the plaintiffs. They severally set forth in their answers the facts above stated and asked that plaintiffs be required to pay into Court for them the value of the improvements and the amount paid for taxes on the land with interest, less the value of the rent of the eighty acres without the improvements, while occupied by the son. (1878 G. S. ch. 75, §§ 15, 16, 17.)

The issues were tried September 19, 1892, before the Court without a jury. Findings of these facts were made and judgment ordered that Elizabeth Pfefferle owned the land, that Henry Mueller had a lien on the south half for $554.91 for taxes paid by him thereon and interest, that Martin Mueller had a lien on the north half for $486.03 for taxes paid thereon by him and his father and for $63.89 the balance of the value of his improvements after deducting the value of the yearly rent, that plaintiffs pay these sums with interest within one year and in default thereof that their title be forfeited to the intervenors and that on such payment the plaintiffs recover possession.

The plaintiffs moved for a new trial and being denied they appeal.

*Lind & Hagberg,* for appellants.

The tax judgment sale was void for want of jurisdiction in the Court to render judgment. The sale of the land to the State was therefore a nullity, and so was the attempted assignment from the state to Peter Manderfield. This assignment certificate was void on its face because no judgment had been shown. If admissible in evidence at all, it could only be received for the purpose of establishing a lien on the land for taxes paid under the occupying claimant's act, but for this purpose it was inadmissible as it was void on its face. The assignment from the State to Manderfield was made two years after the sale. But he did not pay the subsequent taxes. The assignment shows this on its face. We contend

that the payment of these subsequent taxes was a condition precedent without which the County Auditor had no power to issue an assignment. The recital of the payment of subsequent taxes is contained in the form of assignment given in the act itself. Laws 1874, ch. 2, § 19. It was a jurisdictional prerequisite which could not be omitted. A failure to recite this in the certificate makes the latter void on its face. *Cogle* v. *Raph*, 24 Minn. 194; *Gilfillan* v. *Chatterton*, 38 Minn. 335; *Greve* v. *Coffin*, 14 Minn. 345; *O'Mulcahy* v. *Florer*, 27 Minn. 449.

The intervenors had no lien under Laws 1874, ch. 2, § 28, for the taxes paid with interest. They do not claim it in their answers. They claim under the occupying claimants' act and must abide their choice. *Taylor* v. *Slingerland*, 39 Minn. 470; *Dawson* v. *Girard*, 27 Minn. 411.

It is competent for the Legislature in proper cases to subrogate a party who has paid taxes to the lien of the state and to enforce that lien even though the certificate under which he claims his right of subrogation should be void. But this right does not exist unless it is conferred by the statute. *Burdick* v. *Bingham*, 38 Minn. 482.

Laws 1874, ch. 2, § 18, provides that the purchaser or assignee of the State at a sale declared void by reason of anything occurring or omitted subsequent to the entry of judgment, has a right to be refunded from the county and by the proviso such purchaser or assignee has a lien for taxes subsequently paid. This sale was not declared void by reason of anything done or omitted subsequent to the entry of judgment. It was declared void because there was no judgment. *Barber* v. *Evans*, 27 Minn. 92.

The construction we contend for, works no injustice. If the tax title claimant's deed is regular on its face, the occupying claimants' act protects him. If the sale is void and there is a valid judgment, he can recover back his money from the county. If there is neither a valid sale nor a valid judgment we can conceive of no theory upon which a lien could be created against the land.

The Court erred in allowing interest at the rate of two per cent. per month. Interest is allowed by § 28 "at the rate by this act allowed." Now, there is interest allowed at two different rates in the act, one by § 28 at twelve per cent. a year to be paid by the county on void tax sales, and the other by § 29 at two per cent. a

month upon judgments rendered pursuant to this act. The amount for which a parcel is sold or bid in, bears interest at the same rate from the date of sale. All subsequent taxes paid by the purchaser or any assignee bear interest at this rate. The provisions of § 29 relate wholly to valid tax judgments and valid sales and assignments. The statute fixes twelve per cent. as the rate in one class of invalid sales, but not in all. The rate claimed in the answer is seven per cent. under the occupying claimants' act.

That an occupying claimant should have compensation, or rather that he could offset the value of permanent improvements made in good faith under the belief that he was the true owner against a claim for mesne profits is as old as the equity jurisprudence of England. The occupying claimants' act introduced no new principle in our law. It only extended the claimant's remedy by giving him a lien on the land for all improvements, and an affirmative judgment if it exceeded the plaintiff's claim for mesne profits. The rule of equity was that the exemption of an occupant from an account for profits to the extent of lasting improvements made by him is strictly confined to a *bona fide* possessor, who not only supposes himself to be the true proprietor of the land, but who is ignorant of the adverse claim. This we believe to be the spirit of the act of our Legislature. We do not believe that the occupant can blindly shut his eyes and ears to claims that are communicated to him adverse to his title and contentedly say, "My title is good. I am satisfied." We do not believe that foolhardy indifference on his part to facts that would put an ordinarily prudent man on his inquiry, will be held to be good faith. The term "good faith" in this statute must be construed as it is generally used and understood in our laws. Blind, heedless faith, is not good faith. 2 Pomeroy, Eq. J. § 597; *Pringle* v. *Dunn*, 37 Wis. 449; *Brinkmann* v. *Jones*, 44 Wis. 498; *Chadbourn* v. *Williams*, 45 Minn. 294; *Bailey* v. *Galpin*, 40 Minn. 319; *Jewell* v. *Thurn*, 38 Minn. 433.

*Joseph A. Eckstein* and *A. A. Stone*, for respondents.

Laws 1874, ch. 2, § 28, deals with all void sales made under that act. Its proviso deals with any purchaser at any void sale or his assignee or party holding his right, giving to any such purchaser at any void sale, his assignee or party holding his right, a lien upon

the land for all taxes paid subsequent to such purchase; and the fact that provision is made for the repayment by the county to the purchaser of the purchase price with interest paid at sale void for a certain specified and limited class of cases cannot change its effect.

The rate of interest fixed and allowed by the act for subsequent taxes paid, is two per cent. per month. Section 28 does not specify the rate of interest upon these payments otherwise than by reference to the rate fixed by the act. Such rate is fixed in § 29 and not elsewhere and it is there fixed at two per cent. per month. The intervenors hold the right of the assignee of the State and have paid subsequent taxes. This right extends to all cases of void sales. It was stipulated on the trial, to facilitate the determination of the intervenors' rights, that the intervenors are in possession by their tenant of all the land in controversy. Being in possession holding the right of the assignee of the State under a tax sale adjudged to be void and having paid the alleged taxes, they cannot be ejected without first being repaid such taxes, with interest from the date of their respective payments at the rate of two per cent. per month.

The evidence we think establishes the fact that Martin Mueller is a "*good faith*" purchaser, that his entry upon the land claimed by him was peaceable and under color of title in fee and that his improvements were made and the taxes paid prior to any notice, actual or otherwise, of the plaintiff's claim, or of any defects invalidating his title, and he is entitled to recover the taxes so paid and interest and the value of his improvements less the value of the yearly rental.

However defective the proceedings may have been under which this land was sold at this tax sale, the certificate issued to the State, and the assignment to Manderfield are official deeds and regular on their face. *Madland* v. *Benland*, 24 Minn. 372.

The assignment to Henry Mueller endorsed as it is on the official certificate has all the effect of a quitclaim deed. It purports to convey the interest in the land acquired at the sale for delinquent taxes. *Wheeler* v. *Merriman*, 30 Minn. 372; *Seigneuret* v. *Fahey*, 27 Minn. 60.

If the intervenors are not entitled to recover under Laws 1874, ch. 2, and are entitled to recover under 1878 G. S. ch. 75, §§ 16, 17,

then interest should be allowed at the rate of seven per cent. to the date of the Court's decision and no interest should be allowed thereafter.

MITCHELL, J. The land in controversy (160 acres) belonged to one Laudenschlager, and has been sold, under Laws 1874, ch. 2, for taxes delinquent in and prior to 1873, bid in for the state, and the right of the state assigned to one Manderfeld, who subsequently assigned the certificate, for value, to the intervener Henry Mueller. The land not having been redeemed, Mueller went into possession, and subsequently conveyed one eighty to his son, the intervener Martin Mueller, who went into possession under his deed. Plaintiffs, the successors in interest of Laudenschlager, having brought this action to recover possession of the land against defendant, Wieland, the tenant of the Muellers, the latter intervened, alleging title in themselves under the tax title referred to, but also asking that, if it should be adjudged that plaintiffs were the owners, they be required to pay into court, within one year, the value of the improvements made and taxes paid by them during their occupancy, with seven per cent. interest, less the value of the rents and profits.

It is undisputed that plaintiffs are the owners of the land, the tax title under which interveners claimed being void because there was no valid judgment authorizing the sale. The court below sustained this claim as to both interveners, and allowed them interest on the amount of the taxes paid by them, at the rate of two per cent. per month, evidently upon the theory that the provisions of Laws 1874, ch. 2, § 28, already cited, applied.

Upon this appeal the intervenors contend that the decision of the trial court is sustainable (1) under the provisions of the act of 1874; (2) under the "occupying claimant act," (1878 G. S. ch. 75, § 15, et seq.)

The first position is untenable for two reasons: *First*, they do not set up any such claim in their pleadings, which were evidently framed exclusively with reference to relief under the occupying claimant act. There is nothing in the pleadings even suggestive of a claim of lien under the act of 1874, and nothing in the record to indicate that the case was tried on any such theory. It is not enough that somewhere there may be found all the allegations of fact necessary in an action to enforce a lien under the act of 1874.

Having framed their pleadings upon the theory of setting up a claim under one statute, they cannot be permitted to recover on another claim, under another statute, where both the measure of relief and the line of proof might be different. See *Walton* v. *Perkins,* 28 Minn. 413, (10 N. W. Rep. 424.) But, *second,* Laws 1874, ch. 2, § 28, applies only to cases where the sale is declared void by reason of "something occurring or omitted *subsequent* to the entry of the judgment directing the sale." There may have been good reasons for the legislature thus limiting the provision of the law; but, whether there were or not, it is enough that they have done so. And, the right to a lien being purely the creature of statute, it cannot be extended to cases not falling within its provisions. Therefore, the rights, if any, of the interveners, rest exclusively upon the provisions of the occupying claimant law. This will render necessary at least a modification of the decision of the trial judge, for the reason that the statute last referred to only allows the occupant interest at seven per cent. per annum on the amount of taxes paid by him. It will also render it necessary to remand the case for further proceedings, for the reason that, as to Henry Mueller, the court has made no findings of fact, upon which any judgment in his favor, under the occupying claimant law, could be rendered.

This brings us to the question whether the parties have brought themselves within the provisions of this statute. A careful examination of the first section of the act of 1873 (1878 G. S. ch. 75, § 15) will show that it provides for two classes of occupants, to wit: *First.* Those who "under color of title and in good faith have peacefully taken possession," etc. *Second.* Those who have "taken possession of any land under the official deed of any person or officer empowered by law * * * to sell land," etc. The first class may be defined as those who go into possession of land under color of what may be termed "private or unofficial title;" and the second class, those who go into possession under color of what may be called "official title."

Of course, heirs, representatives, or assignees stand on the same footing as the original occupant. In the case of the first class, the person must have taken possession "in good faith." What will constitute good faith, or the want of it, within the meaning of such

v.55M.—14

statutes, is a question upon which there is not entire harmony of views among the courts, as, for example, whether knowledge of the existence of an adverse claim to the land is necessarily, under all circumstances, conclusive against the good faith of the occupant; also, as to whether notice of facts sufficient to put a prudent man upon inquiry, which, if followed up with reasonable diligence, would have led to a discovery of the defective character of the title, will deprive a person of the character of good-faith occupant, or whether the term "good faith" is to be given its original and popular meaning of honesty of purpose,—absence of bad faith.

The second class (those entering under an official deed) seem to be placed by the statute on a somewhat different and more secure footing, probably for the purpose of encouraging purchasers at official sales.   All that is required, in such case, is that the deed be regular on its face, and that the person "has no *actual* notice of any defects invalidating such deed," which would be presumed, in the absence of evidence to the contrary.   The idea of the statute seems to be to place the contemplated purchaser in a position where he may safely buy in reliance upon its provisions, without further investigation, provided the official deed is regular on its face, and executed by one who is empowered by law to make such sales, and *provided* he has no actual knowledge of any defects invalidating the deed.

In this case, of course, the deed from Henry to Martin constituted color of title which would bring the latter within the first class, provided he established the other statutory conditions, even although the auditor's certificate was not an official deed, regular on its face. But, if the certificate is such official deed, then, clearly, he is in a position to claim the benefit of the provisions of the statute as to the second class.

There is no evidence that he had any actual notice of any defects invalidating the tax-sale certificate; and hence, whether the evidence was sufficient or not to justify the finding of "good faith," within the meaning of the first clause of the statute, it was sufficient to justify a finding that Martin had no actual notice of any defects invalidating the instrument.   That the auditor's certificate of assignment of the state's right is "an official deed," within the meaning of the statute, we have no doubt, and it only remains to

consider whether it is "regular on its face." The only substantial objection urged to its regularity is that it does not recite that the party to whom it was issued had paid "the amount of any subsequent taxes" on the land, as provided by Laws 1874, ch. 2, § 19. We cannot resort to extrinsic evidence, as, for example, whether there were in fact subsequent taxes then due on the land, for the purpose of determining whether the certificate is regular on its face. That must be determined from the face of the instrument itself. If there were no subsequent taxes due on the land, it seems to us that the instrument is in the exact form in which it ought to have been, for the auditor could not truthfully recite that the party paid subsequent taxes, when he had in fact paid none; and, if there were none due, there is nothing in the law requiring the auditor to so state in the certificate. The certificate, being in the form in which, under such circumstances, the auditor might rightfully issue it, is not irregular on its face.

But, for reasons already suggested, the cause is remanded to the court below, with instructions to amend its findings of fact and conclusions of law, or make additional ones, in accordance with this opinion, unless, upon application of either party, the court should, for cause shown, in its judicial discretion, grant a new trial.

(Opinion published 56 N. W. Rep. 824.)